BREAUX, C. J.
On the 7th day of November, 1907, the grand jury found a true bill against the defendant, charging him with having taken the life of Robert J. Cambias, Jr., on the 18th day of October, 1907.
He was arraigned, and in January he was placed on his trial, and on the 81st day of that month he was found guilty of murder as charged.
The defendant, having no counsel, was defended by counsel appointed by the court, who appealed to this court from the verdict found by the jury and the sentence of the court.
There is a bill of exceptions in the record setting out the different grounds of defense, such as that the verdict is contrary to the-law and the evidence, that the verdict failed to give to the accused the benefit of such reasonable doubt as he was entitled to under the law, that the verdict was not responsive to-the charge of the court, that the court charged the jury that, if the accused submitted to arrest and was assaulted without cause or provocation by the deceased, then he was not guilty of the crime charged, and in that case he could only be found guilty of- manslaughter.
It also appears by the bill of exceptions-that the defendant asked for a new trial on the ground of newly discovered evidence.
We have copied these grounds, although they are not insisted upon, and in any event are not grounds for setting aside the verdict, as it does not appear that they gave good ground for complaint, or that the ruling of the court, a qua regarding them was erroneous.
It was for the jury to determine under-proper instructions whether the facts were such as to render it evident that the defendant was guilty.
This they have done, and it now remains-for us to consider the questions of law, and such facts properly brought up before the court as may be needful in considering these questions.
The only point argued before us in the-brief' on appeal is whether the evidence of a separate and distinct offense is admissible, although not connected with the offense charged.
The facts are, as relates to this point, that one hour before the commission of the crime *576 ■charged, at a distance of about five squares from the scene of the homicide, a witness, John Sherman, who had been wounded in the neck and back, was at a drug store where he was having his wounds dressed. The deceased, Cambias, who was in uniform and •on duty, entered the drug store and spoke to this witness, and the witness Sherman at that time told him how he had received his wounds. This witness left the drug store in company with the police officer, and repaired to the place where he had been wounded, and pointed out the defendant as his assailant.
The officer then attempted to effect the arrest of the accused, and at that time the police officer was killed.
The complaint on appeal presented by learned counsel is that the witness Sherman, while testifying, was allowed to detail the occurrence of a distinct crime, to wit, that of wounding the witness; that this witness was permitted to show to the jury “the scars and wounds he had received, and to refer to the ■dressing of the wounds and the treatment received therefor.”
In this respect — that is, as relates do the treatment of the wounds — the argument of •counsel is broader than the bill of exceptions. The bill of exceptions related to the asserted independent crime and the wounds inflicted in regard to which the .witness testified.
We have noted that the officer, having received information sufficient to put him upon inquiry, attempted to make the arrest, as was proper for him to do if he had reason to believe that the tacts were such as stated to him by the witness.
How better to prove that fact than by the ■statement that the officer had seen the wounded man and thereupon went to the scene of the homicide and attempted to effect the arrest when he was killed?
Generally if an arresting officer be not permitted to prove the character of the information which led him to undertake to make the arrest without a warant (as Cambias, the deceased, attempted to do in this case), he would very seldom be justified in seeking to arrest a person without a warrant having first been obtained.
The purpose, we take it, was not to prove to the jury that another crime had been committed, but to prove why it was that the officer sought to make the arrest.
This court has laid down the rule that a police officer may prove why it was that he sought to make an arrest, or made an arrest, and that he was in the discharge of the duty with which he was intrusted as an officer. Marr’s Digest, page 677, § 406.
We quote at some length from State v. Stouderman, 6 La. Ann. 288:
“The fact that the life of a person had been endangered in her own domicile was sufficient to justify the officers in entering the house with her to protect her from violence; and, having ascertained that the peace was disturbed and her - life in danger, it was their duty to arrest the husband. It cannot reasonably be denied that the facts as stated amounted to a disturbance of the peace, and the seventh section of this statute expressly authorized the guard to arrest without warrant a person caught in the act of disturbing the peace. Even at common law, it is well settled that a constable may arrest any one for a breach of the peace in his presence, and keep him in his house - or in the stocks until he can bring him before a magistrate.” — citing Archbold, 455.
Again, in State, v. Denkins, 24 La. Ann. 29, the court held:
“The points made by the defendant are that, as he was not indicted for shooting at an officer (a different offense from the one charged), evidence was not admissible to show that G. W. Warren was a public officer, and that the officer having no warrant or authority, and no felony having been committed, there was nothing to justify pursuit by hue and cry, and endanger the life of defendant.”
The court admitted the evidence for the purpose of enabling the prosecution to show that at the time the offense charged was committed Warren was in the peace of the state and the discharge of his duties as a public officer, citing Archbold, vol. 1, p. 91.
*578 The court held that this ruling is correct.
Very much the same view is expressed in the text of Underhill on Evidence.
The difference between the decisions cited by learned counsel, rendered in ■ other jurisdictions, and the case here, is that it was held in several of the .jurisdictions of the other states that another and distinct crime, not connected with the crime for which the accused is placed on trial, cannot be proved.
Here there was no purpose to prove another crime not connected with the cause for which the accused was tried. The testimony related to the cause for which an attempt was made to arrest the accused.
If the case had gone to the jury without testimony showing the cause for the arrest or attempted arrest, the state would have had no case as relates to the crime charged.
The testimony was admissible under the authorities we have cited.
The trial judge states in his narrative, made part of the bill of exceptions, that the testimony “was, therefore, necessary to justify such arrest,” and that in the course of the charge he instructed the jury:
“That an arrest may also be made without a warrant when a felony has been committed, or upon a reasonable charge of the felony having been committed, or upon his own reasonable suspicion that it has been committed; that suspicion must be bona fide, and probable cause exist.”
The purpose of the charge was, we infer, to directthe attention of the jury to the fact that the purpose in admitting the testimony was that they might consider the motive of the deceased officer at the time of the homicide, and that it was not a wanton or illegal attempt to arrest the accused.
There is another ground, merely stated in the brief of learned counsel for defendant, regarding witnesses incapable of realizing the sanctity of an oath.
This ground is not pressed. It is not before us in the form required.
We have considered the different questions raised, and the result is as before expressed. We do not think we should disturb the verdict and the sentence from the grounds urged. It follows that we must affirm the judgment.
For reasons stated, it is ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, affirmed.